**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

_____

MICHAEL WILKS                                    Civil Action No.:

                                                 HON.
        Plaintiff,

vs.

GOLDTHORPE ENTERPRISES, INC

        Defendant.

---

Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
CUNNINGHAM DALMAN, PC
Attorneys for Plaintiff
940 Monroe Avenue, N.W., Suite 253
Grand Rapids, MI 49503
(616) 458-6814

---

## **COMPLAINT AND JURY DEMAND**

Plaintiff Michael Wilks, by his counsel, Cunningham Dalman PC., states his Complaint against defendant Goldthorpe Enterprises, Inc. ("Goldthorpe"), d/b/a Pleasant Moose Lodge, as follows:

## JURISDICTIONAL ALLEGATIONS

1. Michael Wilks, brings this action against defendant Goldthorpe, as an action brought under the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for retaliating against plaintiff when he complained of FLSA violations.

2. This court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331, as it is a civil action arising under the laws of the United States.

3. Plaintiff, Wilks, is a citizen of the United States and the State of Michigan, and he resides in Luce County. Wilks is a former employee of defendant.

4. Plaintiff was an individual employed by defendant and a covered "employee" pursuant to 29 U.S.C. § 203(e).

5. Defendant Goldthorpe operates multiple hotels and other businesses in Michigan's Upper Peninsula, one of which is the Pleasant Moose Lodge, located at 7540 State Highway, M-123, Newberry, MI 49868.

6. Goldthorpe is an "enterprise engaged in commerce or in the production of goods for commerce" 29 U.S.C. § 203(s)(1)(A). As such, Goldthorpe is a covered enterprise under the terms of the FLSA and operated as an "employer" of the plaintiff. such, Bennigan's was a covered enterprise under the terms of the FLSA.

7. All hourly employees of the defendant, including plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to overtime.

8. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claims raised occurred in this district.

9. The events giving rise to this cause of action occurred in the Western District of Michigan.

## GENERAL ALLEGATIONS

10. Goldthorpe had direct or indirect control of the terms and conditions of Wilks' work and the work of similarly situated hourly hotel employees and also exercised that authority.

11. During all relevant times, Goldthorpe also exercised operational control over the hourly employees, including, but not limited to, control over recruiting and training of employees, compensation of hourly employees, job duties of hourly employees, appearance and conduct standards, staff work schedules, work assignments, and overtime policies.

12. Goldthorpe is liable to its hourly hotel employees under the definitions of "employer" set forth in the FLSA because it controls significant aspects of the hourly employees' day-to-day functions, and Goldthorpe ultimately controls compensation of employees. 29 U.S.C. § 203(d).

### Factual Allegations

13. During all relevant times, Goldthorpe owned and operated the Pleasant Moose Lodge ("PML") located at 7540 State Highway, M-123, Newberry, Michigan.

14. PML is a 32-room hotel located in Newberry Michigan and owned and operated by defendant Goldthorpe.

15. Wilks is a former hourly hotel employee of PML.

16. Hourly hotel employees often fill a variety of roles at PML, including laundry, front desk duties, housekeeping, and maintenance.

17. Wilks was hired as a laundry attendant by Goldthorpe and assigned to work at PLM on or about September 10, 2023. Wilks was paid $12.00 an hour.

18. Wilks was promoted to a front desk attendant about two months after he started.

19. Wilks' duties included checking patrons in and out of the hotel, taking reservations, and addressing customer service concerns.

20. Wilks reported to Deb Singleton, the general manager at PLM.

21. Wilks commonly worked 40 hours per week, and occasionally worked over 40 hours per week.

22. For example, the week of May 3rd, 2024, Wilks worked over 40 hours. But Singelton reduced the hours on Wilks' check to only 40 hours.

23. Wilks questioned the reduction in his hours. Singleton, the GM, told him that PML does not pay overtime.

24. On or about June 9, 2024, Singleton told the staff in a group message:

> "Attention: Desk position can sometimes be trying, and those who have stayed off the clock to help, a couple of you numerous times. I want to thank you for your dedication and showing you care about the business it's not just a paycheck to you. Those employees will be shown gratitude and appreciation through raises. Ty all! (heart emoji)."

(Exhibit 1).

25. Wilks questioned Singleton about her message and Wilks told Singleton that working off the clock violated the Fair Labor Standards Act.

26. Singleton then sent a message to the group stating "Attention: no one is expected to work free. Just for the record." (Id.)

27. Upon information and belief, Singleton told the other employees in the chat to leave the group. Singleton and the other employees then formed a new chat without Wilks included. (Id.)

28. After Wilks complained to Singleton, Singleton reduced the number of hours Wilks was scheduled to work.

29. Wilks complained about his hours being reduced.

30. In response to his complaint about retaliation, PML referred Wilks to the regional manager, Andrew Rasche.

31. Wilks informed Rasche about his lack of training and that Singleton was violating the FLSA by encouraging employees to work off the clock. (Exhibit 2). Wilks also stated his intention to speak with an attorney about the violations of the law he observed. (Id.)

32. Rasche ordered Wilks' termination.

33. Rasche claimed to have multiple reasons to terminate Wilks, from too many "smoke breaks" to a poor evaluation earlier in the year. (Id.).

34. Wilks was not provided with a reason for his termination.

35. Wilks has been harmed by the actions and inactions of defendant.

## COUNT I
## VIOLATION OF FAIR LABOR STANDARDS ACT
### (Retaliation)

36. Plaintiff incorporates by reference paragraphs 1 through 35 as fully set forth herein.

37. The FLSA applied to Wilks' employment with PML.

38. Wilks was engaged in protected activity when he complained about not being paid overtime.

39. Wilks was engaged in protected activity when he informed management that PML was violating the FLSA by having employees work off the clock.

40. PML's termination of Wilks was in direct retaliation for Wilks' protected activity.

41. Any claim that Wilks was terminated for performance or pursuant to the at-will doctrine is a pretext because the proffered reason is not true, it is not the real reason for his termination, and is not sufficient to justify his termination.

42. Pursuant to 29 USC 215(a)(3), an employer may not discriminate against an employee for filing any complaint of FLSA violations.

43. Pursuant to 29 USC 216, Wilks is entitled to legal and equitable relief including lost wages, compensatory damages, interest, costs, and attorney fees.

WHEREFORE, Wilks respectfully request this court to enter a judgment in his favor and against defendant as follows:

A. Legal Relief

    (1) Compensatory damages for wages earned;

    (2) Compensatory damages for unpaid overtime hours at a rate of one and one-half times his regular pay;

    (3) Liquidated damages equal to the amount of compensatory damages awarded;

    (4) Compensatory damages for emotional distress; and

    (5) An award of interest, costs, and reasonable attorney fees and expert witness fees.

B. Equitable Relief

(1) An order reinstating Wilks to his former position with PML or a comparable position if his former position is no longer available; or an award of front pay if reinstatement is no longer feasible;

(2) An injunction prohibiting further acts of wrongdoing, illegal wage practices, discrimination, or retaliation; and

(3) Whatever other equitable relief appears appropriate at the time of final judgment.

CUNNINGHAM DALMAN, PC

Attorneys for Plaintiff

Date: July 23, 2024        By:   /s/ *Bradley K. Glazier*
                                 Bradley K. Glazier (P35523)
                                 Robert M. Howard (P80740)

BUSINESS ADDRESS:
940 Monroe Avenue, N.W., Suite 253
Grand Rapids, Michigan 49503
(616) 458-6814


## JURY DEMAND

Plaintiff, Michael Wilks, requests a trial by jury.

CUNNINGHAM DALMAN, P.C.
Attorneys for Plaintiff

Date: July 23, 2024        By:   /s/ *Bradley K. Glazier*
                                 Bradley K. Glazier (P35523)
                                 Robert M. Howard (P80740)

BUSINESS ADDRESS:
940 Monroe Avenue, N.W., Suite 253
Grand Rapids, Michigan 49503
(616) 458-6814